## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN POULOS )<br>)<br>      Plaintiff, )<br>)<br>   v. )<br>)<br>     )<br>C-DSK, LLC, HEADINVEST, LLC, )<br>KENNETH A. BLASCHKE, BENJAMIN )<br>CLARK, and DONNA D. MCCONNELL )<br>)<br>      Defendants. | Civil Action No. |

## COMPLAINT

Plaintiff, Stephen Poulos ("Poulos" or "Plaintiff") files this Complaint against Defendants C-DSK, LLC ("C-DSK"), HeadInvest, LLC ("HeadInvest"), Kenneth A. Blaschke, Benjamin Clark, and Donna D. McConnell (collectively, the "Defendants"). In support of this Complaint, Plaintiff states as follows:

## NATURE OF THE ACTION

1. This is an action for racketeering activity, breach of contract, breach of fiduciary duty, unjust enrichment, and conversion for which Plaintiff seeks injunctive relief, damages, and his reasonable attorneys' fees and costs.

2. As detailed herein, despite generating profits year after year, the Defendants conspired against Plaintiff to deprive him of mandatory distributions owed to Plaintiff pursuant to a contract between the owners of C-DSK.

3. Additionally, the Defendants engaged in a scheme to defraud Plaintiff by intentionally concealing and misrepresenting material facts regarding profit distributions, thereby depriving Plaintiff of rightful earnings.

4. After Plaintiff resigned as a member of C-DSK, the Defendants conspired to unlawfully cancel Plaintiff's ownership Units in C-DSK – generating a windfall for the remaining members worth approximately $1.5 million.

5. Despite multiple requests to honor the ownership contract and pay Plaintiff the distributions he is owed, Defendants continue to deprive Plaintiff of money he is due.

6. Defendants' conduct has already and will continue to cause Plaintiff severe harm.

7. Plaintiff seeks relief from this Court to verify his rights as a Unit Holder (co-owner) of C-DSK and to enjoin Defendants from distributing any funds of the company unless such distribution includes Plaintiff.

## THE PARTIES

8. Mr. Poulos is an adult citizen of Maine. He is currently a Senior Financial Advisor at Great Diamond Partners, LLC in Portland, Maine. Mr. Poulos is a registered Investment Adviser with the Financial Industry Regulatory Authority Central Registration Depository ("FINRA CRD"), No. 299598.

9. C-DSK, LLC is a Maine Limited Liability Company with a principal home office address in Portland, Maine and a registered agent in Portland, Maine.

10. HeadInvest, LLC is a Delaware Limited Liability Company doing business in Maine with a principal home office address in Portland, Maine and a registered agent in Portland, Maine.

11. Upon information and belief, Blaschke is an adult citizen of Maine. Blaschke is also a registered Investment Advisor; FINRA CRD No. 2603041.

12. Upon information and belief, Clark is an adult citizen of Maine. Clark was previously a Registered Broker and is currently a registered Investment Advisor, FINRA CRD No. 2663792.

13. Upon information and belief, McConnell is an adult citizen of Maine. McConnell is also a registered Investment Advisor; FINRA CRD No. 2337529.

14. Upon information and belief Blaschke, Clark, and McConnell are the three current Members of C-DSK.

15. Upon information and belief Poulos, Blaschke, Clark, and McConnell are the four Unit Holders of C-DSK.

## JURISDICTION AND VENUE

16. This Court has federal subject matter jurisdiction over Plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964(d); and over Plaintiff's claim pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

17. This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because all claims are based on a common nucleus of operative fact and all claims form part of the same case or controversy.

18. This Court has personal jurisdiction over Blaschke, Clark, and McConnell because they reside in this District.

19. This Court has personal jurisdiction over C-DSK, because it is a Maine corporation with a principal place of business in this District that conducts extensive business in this District.

20. This Court has personal jurisdiction over HeadInvest, because its principal place of business is in this District and it conducts extensive business in this District.

21. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part, if not all, of the events giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

22. On or about August 28, 2013, Plaintiff became a Unit Holder of C-DSK, LLC.

23. At the time he procured his ownership in C-DSK, Plaintiff executed the Amended and Restated Limited Liability Company Agreement of C-DSK, LLC (hereinafter, the "Agreement"). *See* a true and correct copy of the Agreement attached hereto as Exhibit 1.

24. Section 3.01 of the Agreement identified Poulos, Blaschke, Carl Gerke, and McConnell as the "Members" of C-DSK as of August 28, 2013.

25. Schedule A to the Agreement sets forth each Members' Original Capital Contribution.

26. Mr. Poulos invested $75,000 as Original Capital Contribution and received 750 Units (or shares) of C-DSK, LLC. *See* Ex. 1 at Schedule A.

27. On or about December 31, 2023, Benjamin Clark purchased Gerke's Units and became a 25% owner of C-DSK.

28. Section 2.05 of the Agreement confirms that Poulos remains, to date, a Unit Holder of C-DSK.

29. Specifically, Section 2.05 of the Agreement states that that each "Transferal Interest is represented by one or more 'Units' and each Person (whether or not a Member) who holds one or more Units is a 'Unit Holder.' Each Unit Holder has the number of Units sets forth opposite such Person's name in Schedule A." (underlines in original).

30. Per the plain language of the Agreement, Unit Holders can be Members or non-Members. *Id.* at Section 2.05.

31. Section 2.06 of the Agreement mandates that C-DSK's Directors establish and maintain for each Unit Holder a "Capital Account" pursuant to "the provisions of Regulations Section 1.704-1(b)(2)(iv) – *i.e.*, 26 CFR § 1.704-1(b)(2)(iv).

32. Section 5.02 provides that C-DSK shall make permissive and mandatory distributions to the Unit Holders as follows:

> (a) Permissive Distribution. The Directors may distribute Cash Flow From Operations for a Fiscal Quarter during the 90 days immediately following such quarter.
> (b) Mandatory Distribution. Cash Flow From Operations shall be distributed during the 90 days immediately following the end of each Fiscal Year.

33. Section 5.01 of the Agreement defines "Cash Flow From Operations" as the positive difference of the gross cash proceeds received by C-DSK, LLC for a given period minus the amount of expenses paid by the company.

34. Section 5.04 of the Agreement defines "Fiscal Year" as a calendar year ending on December 31.

35. Additionally, Section 6.02 of the Agreement mandates that the company's profits must be distributed to the Unit Holders proportionally to their ownership of Units at the end of each year.

36. As a shareholder of C-DSK, Plaintiff was entitled to receive proportionate distributions of profits, which based on the Units he owns, equals 25 percent.

37. Between 2019 and 2025, C-DSK generated approximately $2 million in profits. As such, Plaintiff should have received approximately $500,000 in mandatory profit distributions pursuant to the Agreement.

38. Upon information and belief, since at least the end of the 2019 fiscal year, Defendants Blaschke, Clark, and McConnell began conspiring to deprive Plaintiff of his full rightful distributions of C-DSK's profits.

39. Upon information and belief, as part of their fraudulent scheme, Defendants Blaschke, Clark, and McConnell held meetings without providing notice to Plaintiff, during which they discussed and planned their unlawful actions.

40. Upon information and belief, Defendants did not maintain regular notes or minutes of meetings.

41. Most recently, C-DSK did not distribute any profits to Plaintiff for the 2024 fiscal year.

42. Likewise, C-DSK did not make any mandatory distributions to Plaintiff that were due pursuant to Section 5.02(b) of the Agreement on March 31, 2025 – 90 days immediately following the end of the prior fiscal year.

43. Additionally, Defendants created a hostile work environment based on age-related animosity and sexual harassment that Plaintiff believed to unsuitable for his clients – particularly his female clients.

44. For example, following a jury trial in December 2018, HeadInvest Portfolio Manager and Partner, Benjamin Clark, was convicted of one count of attempting to photograph an unsuspecting nude or partially nude person, in violation of Massachusetts G. L. c. 272, § 105(b) following an arrest for upskirting a woman in a retail store on Martha's Vineyard. *See Commonwealth v. Clark*, 18-P-554, 96 Mass. App. Ct. 1102 (Sept. 16, 2019).

45. Given this history of unlawfully freezing Plaintiff out of C-DSK operations and the hostile work environment created by the leaders of C-DSK and HeadInvest, Plaintiff resigned as a Member of C-DSK and employee of HeadInvest on May 16, 2025.

46. At no point did Plaintiff forfeit nor transfer his Units in C-DSK.

47. However, on or about May 17, 2025, counsel for C-DSK notified Plaintiff via email that his 750 Units in C-DSK "have been cancelled." *See* May 17, 2025 letter from C-DSK's counsel to Plaintiff attached hereto as Exhibit 2.

48. Nowhere in the Agreement is there a process or mechanism for canceling a Unit Holder's Units.

49. Section 7 of the Agreement sets forth the permissible means of a Unit Holder transferring his or her Units. Plaintiff has never transferred his Units.

50. Section 7.06(a)(i) of the Agreement mandates redemption by C-DSK of Units for Members who die, become disabled, or are expelled for Cause.

51. However, Plaintiff did not die, become disabled, nor was he expelled for Cause.

52. As such, Plaintiff remains a Unit Holder of C-DSK and is entitled to any and all distributions and/or profits.

53. Despite repeated requests to Defendants to provide support for their contention that Plaintiff's Units have been cancelled, Defendants have provided no such support, because there is none.

54. In connection with the fraudulent cancellation of Plaintiff's shares, Defendants made material misrepresentations and/or omissions of fact, including but not limited to claiming that for several fiscal years in a row C-DSK had no profits.

55. Defendants knew these representations were false when made or made them with reckless disregard for their truth or falsity.

56. Defendants made these misrepresentations and/or omissions with the intent to deceive Plaintiff and to deprive Plaintiff of his rightful distributions from C-DSK.

57. Plaintiff reasonably relied on Defendants' misrepresentations and/or omissions to his detriment.

58. By fraudulently canceling Plaintiff's Units, Defendants deliberately breached the Agreement by failing to make mandatory distributions to Plaintiff, and instead, upon information belief, have already or will imminently distribute those profits among themselves.

59. Upon information and belief, from December 31, 2019 to the present, Defendants have wrongfully converted and retained distributions that rightfully belong to Plaintiff, amounting to more than $500,000.

60. In addition, the fraudulent cancellation of Plaintiff's Units has allowed Defendants to convert and retain Plaintiff's initial $75,000 Capital Contribution. Upon information and belief, the value of Plaintiff's Capital Contribution is currently worth approximately $140,000.

61. The fraudulent cancellation of Plaintiff's Units has also allowed Defendants to convert and retain Plaintiff's 25% ownership share in C-DSK. That 25% ownership share is worth approximately $1,150,000 based on the company's most recent outside consultant's Business Valuation Report.

62. As such, Defendants' unlawful actions have deprived Plaintiff of more than $1.75 million to date.

63. Defendants' actions were deliberate, willful, and in conscious disregard of Plaintiff's rights as a Unit Holder of C-DSK.

## **COUNT I PRELIMINARY INJUNCTION**
(Against All Defendants)

64. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65. Defendants' actions have caused and continue to cause irreparable harm to Plaintiff.

66. As evidenced by Defendants' claim that Plaintiff's Units in C-DSK have been canceled, Defendants intend to enrich themselves by keeping Plaintiff's $75,000 initial Capital Contribution and deprive Plaintiff of future distributions.

67. Plaintiff has suffered or will imminently suffer irreparable injury and damage beyond just financial loss, including harm to his goodwill, professional relationships, and business prospects, which will continue during the pendency of this matter if Defendants are not enjoined from further unlawful conduct.

68. The irreparable damage Plaintiff is suffering because of Defendants' above-described conduct is continuing and mounting.

69. The granting of an order restraining Defendants from making any distributions until Plaintiff's Unit Holder status is resolved will protect Plaintiff from further irreparable harm.

70. Greater damage will be inflicted upon Plaintiff by the denial of the injunctive relief sought herein than upon the Defendants by the granting thereof.

71. There is a substantial likelihood that Plaintiff will prevail on the merits of his claims.

72. Plaintiff has no adequate remedy at law that could fully compensate him for the harms occurring and threatened.

73. Accordingly, Plaintiff is entitled to this equitable relief and an order prohibiting Defendants from making any distributions pursuant to the Agreement until a factfinder renders a final determination on the merits as to Plaintiff's status as a Unit Holder of C-DSK.

## COUNT II – DECLARATORY JUDGMENT
(Against All Defendants)

74. Plaintiff incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

75. An actual controversy exists between Plaintiff and Defendants regarding Plaintiff's status as a Unit Holder of C-DSK and Plaintiff's entitlement to distributions from C-DSK.

76. Defendants have fraudulently canceled Plaintiff's shares in C-DSK without legal authority or justification and have wrongfully withheld distributions that should have been paid to Plaintiff.

77. Plaintiff seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that:

   a. The purported cancellation of Plaintiff's Units in C-DSK was unlawful, invalid, and of no legal effect;

   b. Plaintiff remains a Unit Holder of C-DSK with all rights and privileges attendant thereto;

   c. Plaintiff is entitled to receive all past and future profit distributions in accordance with the Agreement; and

   d. Defendants' conduct in purporting to cancel Plaintiff's Units and withholding distributions violated federal and state laws and breached Defendants' fiduciary duties to Plaintiff.

78. A judicial declaration is necessary and appropriate at this time to resolve the controversy between the parties and to prevent further harm to Plaintiff.

## COUNT III – VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")  18 U.S.C. § 1962(C)
(Against All Defendants)

79. Plaintiff incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

80. Defendants are an Enterprise within the meaning of the RICO, 18 U.S.C. §§ 1961(3) and 1961(4).

81. At all relevant times alleged herein, Defendants were engaged in, and involved in, activities affecting interstate and foreign commerce.

82. At all relevant times alleged herein, Blaschke, Clark, and McConnell conducted, directly and indirectly, the affairs of the Enterprise through a pattern of racketeering activity by perpetuating a scheme to deprive Plaintiff of the distributions due to him as a Unit Holder.

83. By reason of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been deprived of substantial monies and thereby injured in his business and property.

84. Plaintiff's damages were a direct, proximate, and foreseeable result of Defendants' violations of 18 U.S.C. § 1962(c).

85. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees in an amount not yet ascertained and to be proven at trial.

## COUNT IV – BREACH OF CONTRACT
(Against All Defendants)

86. Plaintiff incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

87. The Agreement is a valid and enforceable contract.

88. Plaintiff has fully performed its obligations under the Agreement.

89. Defendants materially breached the Agreement by:

      a.      Failing to pay Plaintiff permissive distributions under Section 5.02(a);

      b.      Failing to pay Plaintiff mandatory distributions under Section 5.02(b);

      c.      Failing to pay plaintiff annual profits under Section 6.02; and

      d.      Cancelling Plaintiff's Units in C-DSK.

90. As a direct and proximate result of Defendants' breach of the Agreement, Plaintiff has suffered and will continue to suffer irreparable harm and other injuries.

91. As a direct and proximate result of Defendants' breach of the Agreement, Plaintiff has suffered and will continue to suffer monetary damages in excess of $1,500,000.00, which will continue to accrue in an amount to be proved at trial.

92. Accordingly, Plaintiff demands that judgment be entered against Defendants for compensatory damages, interest and costs, attorney's fees and other such relief as the Court deems equitable and just.

### COUNT V – VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5
(Against All Defendants)

93. Plaintiff incorporates by reference paragraphs 1 through 92 as if fully set forth herein.

94. Plaintiff's Units in C-DSK constitute "securities" within the meaning of the Exchange Act.

95. Article X of the Agreement implements a condition precent on Unit Holders that no Transferable Interest may be sold or transferred unless and until that Transferable Interest is registered under the Securities Act of 1933.

96. Section 2.05 defines "Transferable Interests" as "Units."

97. Plaintiff currently owns 750 Units of C-DSK.

98. Plaintiff cannot sell or transfer his Units without registering the Units as securities governed by the Securities Act.

99. Defendants, directly and indirectly, by the use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, knowingly or recklessly: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud or deceit upon Plaintiff in connection with the fraudulent cancellation of his shares in C-DSK.

100. Defendants' fraudulent conduct included, but was not limited to, making material misrepresentations and/or omissions concerning the status of Plaintiff's ownership interest in C-DSK and Plaintiff's entitlement to profit distributions, and subsequently fraudulently canceling Plaintiff's shares without legal authority or justification.

101. Defendants acted with scienter in that they knew, or recklessly disregarded, that their representations were false, and that the cancellation of Plaintiff's Units was fraudulent.

102. Plaintiff justifiably relied on Defendants' misrepresentations and/or omissions to his detriment.

103. As a direct and proximate result of Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT VI – CONVERSION
(Against All Defendants)

104. Plaintiff incorporates by reference paragraphs 1 through 103 as if fully set forth herein.

105. Plaintiff, as a Unit Holder, had and continues to have a legal right to receive distributions from C-DSK as provided in the Agreement.

106. Defendants wrongfully exercised dominion and control over funds rightfully belonging to Plaintiff by fraudulently canceling Plaintiff's shares and withholding distributions that should have been paid to Plaintiff.

107. Defendants' unauthorized exercise of control over Plaintiff's property was in derogation of Plaintiff's rights.

108. As a direct and proximate result of Defendants' wrongful conversion, Plaintiff has suffered damages in an amount to be determined at trial.

109. Accordingly, Plaintiff demands that judgment be entered against Defendants for compensatory damages, interest and costs, attorney's fees and other such relief as the Court deems equitable and just.

## COUNT VII – UNJUST ENRICHMENT
(Against All Defendants)

110. Plaintiff incorporates by reference paragraphs 1 through 109 as if fully set forth herein.

111. Neither of the Defendants have a statutory, contractual, or equitable right to the distributions owed to Plaintiff.

112. Nor due either of the Defendants have a statutory, contractual, or equitable right to Plaintiff's $75,000 Original Capital Contribution.

113. By failing to pay Plaintiff the distributions owed to him and by impermissibly cancelling Plaintiff's Units in C-DSK, the Defendants have unjustly benefited at Plaintiff's expense.

114. The Defendants have exclusive access to and control over the monies owed to Plaintiff.

115. The failure of the Defendants to make distributions to Plaintiff violates established principles of fairness and equity separate and apart from the terms of the Agreement.

116. By reason of Defendants' failure to make distributions to Plaintiff, and its promised future refusal to make distributions to Plaintiff, Defendants have been unjustly enriched in an amount to be determined at trial.

117. By reason of the foregoing, Plaintiff suffered and continues to suffer damages in an amount not yet ascertained and to be proven at trial.

118. Accordingly, Plaintiff demands that judgment be entered against Defendants for compensatory damages, interest and costs, attorney's fees and other such relief as the Court deems equitable and just.

## COUNT VII – BREACH OF FIDUCIARY DUTY
(Against Defendants Blaschke, Clark, and McConnell)

119. Plaintiff incorporates by reference paragraphs 1 through 118 as if fully set forth herein.

120. As controlling Members and Unit Holders of C-DSK, Defendants Blaschke, Clark, and McConnell owed fiduciary duties of loyalty, care, and good faith to Plaintiff as a fellow shareholder.

121. Defendants Blaschke, Clark, and McConnell breached their fiduciary duties to Plaintiff by:

   a. Fraudulently canceling Plaintiff's Units in C-DSK;

   b. Diverting to themselves distributions rightfully belonging to Plaintiff;

   c. Acting in their own self-interest to the detriment of Plaintiff; and

    d.  Failing to act in good faith toward Plaintiff.

122. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff has suffered and will continue to suffer damages, which will continue to accrue in an amount to be proved at trial.

## JURY DEMAND

123. Plaintiff demands a trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

1. Enjoining Defendants pending the final determination of this matter, from committing the following acts:

    a) Cancelling Plaintiff's Units in C-DSK;

    b) Making any permissive or mandatory distributions as defined by the Agreement; and

    c) Distributing any profits of C-DSK unless such distributions are paid to Plaintiff based on his proportional ownership of C-DSK Units.

2. Awarding Plaintiff compensatory damages in an amount to be determined at trial;

3. Awarding Plaintiff the distributions wrongfully withheld by Defendants;

4. Awarding Plaintiff prejudgment and post-judgment interest at the maximum rate permitted by law;

5. Awarding Plaintiff punitive damages for Defendants' willful and malicious conduct;

6. Awarding Plaintiff his reasonable attorneys' fees, costs, and expenses incurred in this action; and

7. Granting such other and further relief as the Court deems just, equitable, and proper.

Dated: October 6, 2025

*/s/ Steven J. Silver*
Steven J. Silver, Bar No. 5946
LITTLER MENDELSON, P.C.
1 Monument Square, Suite 600
Portland, ME 04101
Tel. 207-774-6001
Email: ssilver@littler.com
*Attorney for Plaintiff Stephen Poulos*
